Dear Executive Director Hughes,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask the following question:
 Under Article XXIX, Section 1(B) of the Oklahoma Constitution, may two members of the Ethics Commission continue to serve out their terms (both expiring July 2004) despite the fact that both will be representing Congressional District 2 in January 2003, due to the reapportionment of Congressional Districts?
 I.
 Constitutionally Established Qualifications For Serving On The Ethics Commission
¶ 1 At Article XXIX, Section 1, the Oklahoma Constitution provides, among other things, for the appointment, qualifications and terms of the five members of the Ethics Commission. In pertinent part that Section of the Constitution provides:
 A. There is hereby created the Ethics Commission which shall consist of five members. The Governor, Attorney General, President Pro Tempore of the Senate, Speaker of the House of Representatives, and Chief Justice of the Supreme Court shall each appoint a person who is a registered voter of this State to the Commission. The initial terms of the Governor's and Attorney General's appointees shall be one year; the initial terms of the President Pro Tempore's and Speaker's appointees shall be three years, and the initial term of the Chief Justice's appointee shall be five years.
 B. No congressional district shall be represented by more than one Commissioner, and no more than three persons of the same political registration shall serve on the Ethics Commission at the same time.
 C. After the initial terms, members of the Ethics Commission shall serve terms of five years. No person shall be appointed to the Commission more than two times in succession, except the initial members who serve less than five-year terms may be appointed three times in succession. A vacancy on the Commission shall be filled for the remainder of the unexpired term by the appointing authority.
Okla. Const. art. XXIX, § 1 (emphasis added).
 II. Facts Giving Rise To Your Opinion Request
¶ 3 The current membership of the Ethics Commission consists of five Commissioners representing Congressional Districts 2, 3, 4, 5 and 6. With Oklahoma's loss of a Congressional District, and the recent Redistricting Court Order, the member who currently represents Congressional District 3, Commissioner Hamilton, will represent District 2. District 2, however, is already represented by a Commissioner from that District, Commissioner Luton, who was originally appointed in October 1994 and whose term expires on the second Monday in July 2004. Thus, by virtue of the recent Redistricting Order, Commissioner Hamilton, who currently represents District 3, and whose term of office also expires on the second Monday in July 2004, effectively has his residence moved from District 3 to District 2, which is already represented by Commissioner Luton who at all times, including the present, has resided in District 2.
¶ 4 You ask in light of the constitutional prohibition that no Congressional District shall be represented by more than one Commissioner, whether both of the incumbents may continue to serve and represent Congressional District 2, and if not, which of the two incumbents remains eligible to represent District 2.
 III. The Constitutional Requirement That No Congressional District Shall Be Represented By More Than One Member Of The Ethics Commission Is Different From "Appointment From" Requirements Imposed On Various Other State Officers
¶ 5 The prohibition in Article XXIX, Section 1 that no Congressional District be represented by more than one Ethics Commissioner, is markedly different from "Congressional District" qualifications imposed by other Oklahoma laws. The requirement of Article XXIX, Section 1 is not simply that no two members of the Ethics Commission can be "appointed from" the same Congressional District, as is the case with members of various other State entities. For example, the Alcoholic Beverage Laws and Enforcement Commission provision of Article XXVIII, Section 1, requires that: "No more than two (2) members of the Commission shall be appointed from the same federal congressional district." (Emphasis added). A similar requirement is provided for appointment to the Board of Investors of the Tobacco Settlement Endowment Trust Fund, at Article X, Section 40(C), which provides, "No more than two appointees shall be appointedfrom any single congressional district." (Emphasis added). Like requirements are made on appointments to the Polygraph Examiners Board, 59 O.S. 2001, § 1455[59-1455],[1] ("No more than two members may be appointed from one congressional district."); and the State Board of Veterinary Medical Examiners, 59 O.S.2001, § 698.4[59-698.4](2),[2] ("No more than one veterinary member of the Board shall be appointed from any one Congressional District.").
¶ 6 In contrast to the "appointed from" requirements of these provisions, the Ethics Commission provision prohibits a Congressional District from being "represented by" more than two Commissioners. The requirement in the Ethics Commission provision deals with representation of the Congressional District, not just residency in a district at the time of appointment. While in order to represent a Congressional District, an Ethics Commissioner must be appointed from that district, the constitutional requirement with respect to Ethics Commissioners requires more than residency in the district he or she represents at the time of appointment. The restriction requires that no other Ethics Commissioner reside in the district, and thus also represent the same district.
¶ 7 Further, the constitutional requirement that no Congressional District shall be represented by more than one Ethics Commissioner is also different from provisions which require that one member should be appointed from each
Congressional District. Various statutes dealing with the qualifications to serve on boards and commissions in the Executive Branch of government contain a requirement that members be appointed from each Congressional District. For example, the enactment creating the Oklahoma Horse Racing Commission, 3A O.S. 2001, § 201[3A-201](A),[3] provides that, "One member shall be appointed from each congressional district." A like provision is contained in the statute creating the Oklahoma Water Resources Board, 82 O.S. 2001, § 1085.1[82-1085.1](A);[4] the State Board of Education, 70 O.S. 2001, § 3-101[70-3-101];[5] the State Board of Career and Technology Education, 70 O.S. 2001, §14-101[70-14-101];[6] the State Board of Cosmetology, 59 O.S. 2001,§ 199.2[59-199.2](A)(2);[7] the State Board of Corrections, 57 O.S.2001, § 503[57-503];[8] and the Court of Civil Appeals, 20 O.S.2001, § 30.15[20-30.15].
¶ 8 The prohibition in the Ethics Commission's enabling provisions, unlike the provisions noted above, does not merely require the members of the Commission be appointed from the Congressional District, or merely prohibit that no two members could be appointed from the same Congressional District. Rather, the tenor of the constitutional prohibition is different. It requires that no Congressional District be represented by more than one Ethics Commissioner. That is, the constitutional provision dealing with the Ethics Commission is not a mere requirement that no more than one Commissioner be appointedfrom a single Congressional District. It is a broader prohibition, prohibiting a district from being represented by more than one Commissioner.
 IV. Inapplicability Of Agency-Specific Statutory Limits Or Savings Clauses To Constitutional Provision That No Congressional District Be Represented By No More Than One Ethics Commissioner
¶ 9 There is no savings clause in the Ethics Commission provisions of Article XXIX, as there is in some other enactments, under which changes in the boundaries of Congressional Districts have no effect on incumbent officeholders because the Congressional Districts, as they existed either at the time of appointment or other set time, control. The Legislature has enacted such statutory savings clauses in several instances. In the Oklahoma Real Estate License Code, the Legislature provided at 59 O.S. 2001, § 858-201[59-858-201](D),[9] that, "[n]o more than two members shall be appointed from the same congressionaldistrict according to the latest congressional redistrictingact." (Emphasis added) The Legislature, in a similar vein, made it clear in 20 O.S. 2001, § 30.11[20-30.11] that judges of the Court of Civil Appeals are to be elected or appointed from the Congressional Districts using the Congressional District boundaries as they exist at the time of election orappointment:
 Judges of the Court of Civil Appeals shall be elected or appointed from the Congressional Districts with the boundaries as they exist at the time the Judge is elected or appointed to office; however, should the boundaries of the six Congressional Districts be revised and elections for the office of United States Representative be conducted using the revised boundaries, then the revised boundaries shall also be used in the conduct of any elections required for the office of Judge of the Court of Civil Appeals; except that Judges of the Court of Civil Appeals seeking retention shall be retained in the original Congressional District from which they were elected or appointed; provided, however, nothing in this section shall be construed to require a change of residence of a Judge of the Court of Civil Appeals seeking retention. Should the number of Congressional Districts be increased or decreased the sections which define the area of each of the six Congressional Districts shall remain in effect for the purpose of this act, and at that time the sections shall be renumbered and codified in this title of the Oklahoma Statutes following this act.
Id. (emphasis added) (footnote omitted).
¶ 10 Similarly, in providing for the appointment of members of the Board of Juvenile Affairs, the Legislature at 10 O.S. 2001,§ 7302-1.1[10-7302-1.1](B),[10] sought to make clear that of the appointments which were made on the basis of currently existing congressional districts that, "[o]ne member shall be appointed from each of the six congressional districts as defined and inexistence on February 1, 1995." (Emphasis added). Also, in providing for the appointment of members to the State Bureau of Investigation Commission, the Legislature made it clear that for the purpose of such appointments, the Congressional Districts as they presently existed controlled, "not more than two of whom shall be from the same congressional district as construed atthe time of enactment of this section." 74 O.S. 2001, 150.3(A)[11] (emphasis added).
¶ 11 In addition to using language indicating that qualification limits relating to appointment from Congressional Districts were to be controlled by the Congressional Districtsas they existed at the time of appointment or the time thatthe particular statute was enacted, the Legislature has also, in other specific legislation, provided that any reduction in Congressional Districts would have no effect on the ability of a properly appointed member to continue to serve. For example, this was done in the statute creating the Committee of Home Inspector Examiners at 59 O.S. 2001, § 858-624[59-858-624](A). In pertinent part that statute provides:
 Appointments shall be made so that not more than two members shall, at the time an appointment is made, be residents of the same congressional district;
provided, no member shall be removed from office due solely to a reduction in the number of congressional districts.
Id. (emphasis added).
¶ 12 In enacting the statutes creating the Committee of Home Inspector Examiners, the Legislature not only made it clear that the qualification limits on appointments from Congressional Districts dealt with residency at the time of appointment, but also made it clear that any reduction in Congressional Districts would not require the removal of a properly appointed member. The Ethics Commission provisions of Article XXIX do not contain such savings clauses. Nor do the general savings clauses enacted as part of the Oklahoma Congressional Redistricting Act of 1991 apply to the Ethics Commission. See 14 O.S. 2001, §§ 5.1-5.5[14-5.1-5.5].
 V. Inapplicability Of The Oklahoma Congressional Redistricting Act Of 1991's Saving Clause To Oklahoma's 2002 Congressional Redistricting, Which Was Accomplished Through Court Order
¶ 13 In enacting the Oklahoma Congressional Redistricting Act of 1991, the Legislature specifically addressed situations in which appointees to boards, commissions and authorities, by virtue of congressional redistricting, would be out of compliance with specific statutory requirements. Title 14, Section 5.3 provides that the Congressional Redistricting Act of 1991 "shall not affect the operation of any board, commission or other entity whose membership is based upon Congressional Districts which have heretofore been created by law." That savings clause, however, only dealt with changes in Congressional Districts occurring by virtue of the Oklahoma Congressional Redistricting Act of 1991, not changes in the Congressional Districts made in 2002.
¶ 14 Because the most recent congressional redistricting in the State of Oklahoma resulted not from the enactment of a Redistricting Act of the Legislature, but rather as a result of a Court Order, no such saving provision exists regarding the 2002 Congressional Redistricting in Oklahoma. See Journal Entry of Judgment filed in Alexander v. Taylor, No. CJ-2002-855, (Okla. County Dist. Ct. May 31, 2002). That Journal Entry of Judgment provided in pertinent part that it was "ordered, adjudged and decreed that Governor Keating's Continuity Plan is implemented as the Congressional district plan for the State of Oklahoma, effective immediately." Id. at 4.
 VI. Inapplicability Of Title 74's Savings Clause And Newly Enacted Agency-Specific Savings Clauses To Constitutional Requirements, Such As Article XXIX's Provision That Requires That No Congressional District Be Represented By More Than One Ethics Commissioner
¶ 15 Finally, the general statutory savings clause that exists separate and apart from the Oklahoma Congressional Redistricting Act of 1991 is not applicable to Ethics Commission members, because that savings clause only deals with statutory requirements. Despite the fact that there was no specific savings clause enacted in conjunction with the 2002 Congressional Redistricting in Oklahoma, the general provisions in Title 74 dealing with appointments based on Congressional Districts, enacted in 1992 as a general statutory provision, and not just a provision dealing with a specific redistricting act, protect members appointed to statutory entities from having their ability to continue to serve changed by subsequent adjustments in Congressional Districts. First, at 74 O.S. 2001, § 2.3[74-2.3], the Legislature provides for the definition of "`congressional district', when used with respect to the appointment of a member of a state board, commission, authority, or other statutory entity." The Legislature defines such Congressional District to mean the most recently configured district:
 A. Except where otherwise specified by law, the term "congressional district", when used with respect to the appointment of a member of a state board, commission, authority, or other statutory entity, shall mean the district as most recently configured by law.
Id. (emphasis added).
¶ 16 Then, the general enactment provides that immediate compliance based upon a change in Congressional Districts is not mandated, but rather subsequent appointments at the earliest possible date shall be made to cause membership to ultimately come into compliance:
 B. For entities which subsection A of this section renders out of compliance with specific statutory requirements, subsequent appointments shall be so made as to cause compliance to be effected at the earliest possible date.
Id. (emphasis added).
¶ 17 Under the provisions of Section 2.3(B), members of boards, commissions, authorities, and entities, who, because of a change in Congressional Districts would no longer meet statutoryrequirements relating to residency within a Congressional District, may continue to serve, and when their term is up, a subsequent appointment to bring the agency into compliance can be made.
¶ 18 This general savings provision, however, deals only withstatutory requirements. Indeed, the Legislature could not have dealt with constitutionally created eligibility requirements; to hold that the Legislature by enacting a statutory savings provision, such as 74 O.S. 2001, § 2.3[74-2.3], could change constitutionally created requirements, would in essence be to hold the Legislature could amend the Constitution. Clearly, except for special provisions in Article IX of the Oklahoma Constitution,[12] the Legislature is without power to amend the Constitution. Thus, even if the Legislature had attempted to amend the appointment or service requirements of Ethics Commissioners, its attempt to do so would have had no effect, as the requirements are constitutionally imposed requirements, which cannot be amended by the Legislature.
¶ 19 At 2002 Okla. Sess. Laws ch. 375, the Legislature amended more than a score of specific statutes dealing with various agencies as diverse as the Horse Racing Commission, the Indigent Defense System Board, the Education Oversight Board, and many of the agencies mentioned above. Those amendments change appointment and serving of term qualifications upon modification of Congressional Districts. The amendments made in the Oklahoma Aviation Commission's statutes are typical of those made for many of the agencies; they provide in pertinent part that:
 [W]hen congressional districts are redrawn each member appointed prior to July 1 of the year in which such modification becomes effective shall complete the current term of office and appointments made after July 1 of the year in which such modification becomes effective shall be based on the redrawn districts. Appointments made after July 1 of the year in which such modification becomes effective shall be from any redrawn districts which are not represented by a board member until such time as each of the modified congressional districts are represented by a board member. No appointments may be made after July 1 of the year in which such modification becomes effective if such appointment would result in more than two members serving from the same modified district.
2002 Okla. Sess. Laws ch. 375, § 1(A) (amending 3 O.S. 2001, §84[3-84](A)) (emphasis added).
¶ 20 None of the provisions amended in 2002 Okla. Sess. Laws ch. 375 deal with the Ethics Commission, and, as noted above, no enactment of the Legislature could have amended the constitutionally imposed requirements at issue.
 Conclusion
¶ 21 Because the constitutional prohibition imposed upon eligibility to serve on the Ethics Commission at Section 1 of Article XXIX of the Oklahoma Constitution is not a mere "appointment from" requirement, but is a broader prohibition which prohibits any single Congressional District from being represented by more than one Ethics Commissioner, and because there is no applicable savings clause that would permit incumbent Ethics Commissioners who become ineligible to serve by virtue of changes in the boundaries of Congressional Districts, we conclude that an incumbent Ethics Commissioner who, by virtue of Congressional District boundary changes becomes a resident of a different Congressional District that is already represented by an Ethics Commissioner, is not eligible to serve out his or her full term of office.
¶ 22 This conclusion does not mean, however, that a mere change in Congressional District residency results in an automatic forfeiture of office. Rather, as the Oklahoma Supreme Court held in Nesbitt v. Apple, 891 P.2d 1235, 1240 (Okla. 1995), before a forfeiture of office based upon a failure to qualify or continue to qualify can be effective, the appointing authority must make an express determination that a vacancy exists by reason of the failure to continue to qualify. Further, under the teachings of Nesbitt, if there is a dispute regarding the failure to qualify, the appointing authority must afford the incumbent officeholder an opportunity to contest such a claim to comply with due process rights of the incumbent officeholder. Further, until the appointing authority declares a vacancy, no new appointment may be made to the position. See id. at 1241; 51 O.S. 2001, § 8[51-8]. Finally, incumbent officeholders, like all State officers under the provisions of Article XXIII, Section 10
of the Oklahoma Constitution, "shall continue to perform the duties of their offices until their successors shall [have been] duly qualified."
¶ 23 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Under the provisions of Article XXIX, Section 1(B) of the Oklahoma Constitution, which provides for the creation of the Ethics Commission and establishes the qualifications for holding office as an Ethics Commissioner, "[n]o congressional district shall be represented by more than one Commissioner."
 2. The prohibition in Article XXIX, Section 1(B) of the Oklahoma Constitution, which prohibits a single Congressional District from being represented by more than one member of the Ethics Commission is different from" appointment from" requirements imposed on various other State offices, such as the provisions of Article X, Section 40(C) of the Oklahoma Constitution, which in providing for the appointment of members of the Board of Investors of the Tobacco Settlement Endowment Trust Fund, requires that no two appointees "shall be appointed from any single congressional district." Rather, the requirement of the Ethics Commission provision of Article XXIX, Section 1(B), deals with representation of the Congressional District, not just residency in a district at the time of appointment.
 3. If the residence of an incumbent Ethics Commissioner, by virtue of congressional redistricting, changes districts and the new district in which that incumbent's residence is located is already represented by an incumbent Ethics Commissioner, then the incumbent Commissioner whose residency changed districts is not eligible to serve the remainder of his or her term, as continuation of his or her service would result in the Congressional District being represented by more than one Ethics Commissioner.
 4. A change in Congressional District boundaries which results in an incumbent Ethics Commissioner becoming ineligible to continue to serve because of the prohibition on a Congressional District being represented by more than one Ethics Commissioner, does not in and of itself work a forfeiture of the incumbent Commissioner's office. Rather, until such time as the appointing authority properly declares a vacancy by virtue of the incumbent Commissioner's inability to continue to serve, no new appointment may be made to the position. Further, incumbent Ethics Commissioners, under the provisions of Article XXIII, Section 10 of the Oklahoma Constitution, continue to perform the duties of their office until their successor is duly qualified.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 NEAL LEADER Senior Assistant Attorney General
[1] As discussed more fully in Section VI of this Opinion, the Legislature made adjustments to this statute, modifying provisions dealing with qualifications and serving of terms, when adjustments are made in Congressional District boundaries.
[2] See supra note 1, above.
[3] See supra note 1, above.
[4] See supra note 1, above.
[5] See supra note 1, above.
[6] See supra note 1, at 3.
[7] See supra note 1, at 3.
[8] See supra note 1, at 3.
[9] See supra note 1, at 3.
[10] See supra note 1, at 3.
[11] See supra note 1, at 3.
[12] Under the provision of Article IX, Section 35 of the Oklahoma Constitution, the Legislature is empowered to "alter, amend, revise, or repeal" Sections 18 to 34 inclusive of Article IX, all of which deal with the Corporation Commission and which are inapplicable to Article XXIX.